```
                                                                       1

 1                              UNITED STATES DISTRICT COURT

 2                              WESTERN DISTRICT OF NEW YORK

 3

 4

 5      - - - - - - - - - - - - - - X
        UNITED STATES OF AMERICA    )     15CR142
 6                                  )
        vs.
 7                                            Buffalo, New York
        EDGAR DEKAY, II,                      February 27, 2019
 8                  Defendant.      )            2:30 p.m.
        - - - - - - - - - - - - - - X
 9      SENTENCING

10
                                    TRANSCRIPT OF PROCEEDINGS
11                    BEFORE THE HONORABLE ELIZABETH A. WOLFORD
                                 UNITED STATES DISTRICT JUDGE
12

13
                                    JAMES P. KENNEDY, JR., ESQ.
14                                  United States Attorney
                                    BY: JOSEPH TRIPI, ESQ.
15                                      BRENDAN CULLINANE, ESQ.
                                    Assistant United States Attorneys
16                                  138 Delaware Avenue
                                    Buffalo, New York 14202
17

18                                  EMILY P. TROTT, ESQ.
                                    70 Niagara Street, Suite 210
19                                  Buffalo, New York 14202
                                    Appearing on behalf of the Defendant
20
                                    S. Murray, USPO
21

22

23
        COURT REPORTER:    Karen J. Bush, Official Court Reporter
24                         (585) 613-4312
                           100 State Street
25                         Rochester, New York 14614
```

```
 1                      USA VS. E. DEKAY
 2                    P R O C E E D I N G S
 3                      *       *       *
 4
 5
 6            THE CLERK:  United States versus Edgar DeKay,
 7   15CR142.  We're here for a sentencing.  Counsel, please state
 8   your name and who you represent.
 9            MR. CULLINANE:  Good afternoon, Brendan Cullinane
10   and Joseph Tripi on behalf of the United States.
11            THE COURT:  Mr. Dekay, you can come up to the
12   podium with your attorney.
13            Could you state your name for the record, Ms.
14   Trott?
15            MS. TROTT:  Emily Trott here for Mr. Dekay.
16            THE COURT:  And are you Edgar Dekay?
17            THE DEFENDANT:  Yes, ma'am.
18            THE COURT:  And you're represented here today by
19   Ms. Trott?
20            THE DEFENDANT:  Yes, ma'am.
21            THE COURT:  And the record should reflect that
22   Officer Murray is here from probation.
23            So the matter is on for sentencing.  I'm going to
24   state on the record what I received and reviewed in connection
25   with sentencing.  I have the Presentence Investigation Report
```

```
1                        USA VS. E. DEKAY
2    that was filed at docket 1395.  I have the statement of the
3    government with respect to sentencing factors that was filed at
4    1435 on September 24, 2018.  I have the defendant's statement
5    with respect to sentencing factors filed at docket 1404 on
6    September 24, 2018.  And I have a sealed motion that was filed
7    by the government at docket 1414 on September 27th, 2018.  That
8    also has attached to it some e-mail correspondence.  I received
9    back in September of 2018 a number of letters from Ms. -- on
10   behalf of Mr. Dekay from Ms. Trott, and I'll identify them on
11   the record.  They came by letter dated September 24th, 2018.
12   And they are letters from Mr. Dekay's daughters, letters from
13   Mr. Dekay's wife, two letters from Mr. Dekay's mother, a letter
14   from Mr. Dekay's aunt, a letter from Mr. Dekay's mother-in-law,
15   and a letter from Mr. Dekay's mother and his niece, and a
16   letter from Richard Worth, the programs director at the Niagara
17   County Correctional Facility, two certificates of achievement
18   from Northeast Ohio, and a letter from the unit manager from
19   that facility and letters from friends and part-time employers
20   of Mr. Dekay, three of those letters.  And then letters from
21   long-time friends of Mr. Dekay.  Four of those letters.  And
22   then, in addition, by letter dated February 20th, 2019, Ms.
23   Trott sent a letter on behalf of Mr. Dekay from an Anthony
24   Dloniak, who was a defendant who appeared in front of me and
25   was prosecuted by Mr. Cullinane, who apparently is friends with
```

```
1                         USA VS. E. DEKAY
2    Mr. Dekay.
3              And then last night, two e-mails were sent by Ms.
4    Trott that had various attachments.  The one was a Notice of
5    Motion to seal with an affidavit in support of that motion and
6    a proposed order and a certificate of service.  And then, also,
7    there was another copy of the same e-mail that is attached to
8    the government's sealed motion, this is an e-mail from Mr.
9    Tripi dated September 8th, 2017 to Ms. Duque, copied to Mr.
10   Cullinane.  Ms. Trott's response to that e-mail.  And then
11   there were some additional e-mails attached to that
12   communication from Ms. Trott last night.  There was an e-mail
13   exchange from her to Mr. Tripi from September of 2018.  Then
14   there is an e-mail exchange again between Ms. Trott and Mr.
15   Tripi from October of 2018.
16             Then there is a filing from docket 09CR55, that
17   apparently was in front of Judge Arcara.  A filing on February
18   7th, 2018 at docket 435 that, apparently, was signed by Mr.
19   Lynch at the U.S. Attorney's Office.  There was a _Wall Street_
20   _Journal_ article attached to the e-mails dated June 20, 2017, at
21   least it was identified as a _Wall Street Journal_ article.  I'm
22   not sure the document itself had any identification.  And then
23   there was another copy of the e-mail exchange from Mr. Tripi to
24   Ms. Trott, it's attached to the government's sealed motion from
25   December of 2017.  And then the response from Mr. Cullinane
```

```
1                      USA VS. E. DEKAY

2    dated September 25, 2018, looks like it was from your legal

3    assistant that was just forwarding the sealed motion of Ms.

4    Trott.

5                   So that is what I have in connection with

6    sentencing.  So, I guess I'll start with you, Mr. Cullinane.

7    First of all, as far as you're concerned, have I missed

8    anything?

9                   MR. CULLINANE:  No, your Honor.

10                  THE COURT:  Can you confirm for me that the

11   government received the Presentence Investigation Report?

12                  MR. CULLINANE:  Yes, your Honor.

13                  THE COURT:  And does the government have any

14   objections to the Presentence Investigation Report?

15                  MR. CULLINANE:  No, your Honor.

16                  THE COURT:  Ms. Trott, first of all, as far as

17   you're concerned, have I missed anything that was submitted in

18   connection with sentencing?

19                  MS. TROTT:  Judge, I believe I submitted a motion

20   under seal which I've worked really hard on that I believed I

21   had e-mailed everyone last night, including -- or assistants.

22                  THE COURT:  What time last night?

23                  MS. TROTT:  Around the same time, it should have

24   been with those other e-mails because they were identified as

25   exhibits, the items that you just designated for exhibits to my
```

```
1                       USA VS. E. DEKAY

2     motion.

3              THE COURT:  I didn't receive the motion.  Did the

4     government receive the motion?

5              MR. CULLINANE:  No.

6              MS. TROTT:  I thought Mr. Tripi had and I thought

7     I was successful in that because I received an e-mail

8     indicating the government would need to respond to my motion.

9              MR. TRIPI:  Could I speak to that, your Honor?

10    This morning I woke up, I saw on my iPhone what was just the

11    title of a motion without being able to read.  The night

12    before, Mr. Cullinane and I had a discussion that no motion had

13    ever came.  And it was ironic to wake up and see that a motion

14    was filed at 11:41 without reading anything.  I sent an e-mail

15    to Ms. Trott saying something to the effect of, "I doubt that

16    sentencing will go forward, I'll need to respond to your

17    spurious motion," which is exactly what I wrote in an e-mail

18    this morning.  That was without reading anything and realizing

19    we hadn't received the motion.

20             MS. TROTT:  And I apologize for that.  I have been

21    working on this motion diligently.

22             THE COURT:  No, you haven't, Ms. Trott.  No, you

23    haven't.  Don't even stand in front of me and suggest that you

24    have been diligent here.  As far as I'm concerned, you have

25    blown all of the deadlines that I set.  I very clearly on
```

```
 1                        USA VS. E. DEKAY
 2    December 20th, 2018 granted you one more extension of this
 3    sentencing date.  And I said, "No further extensions will be
 4    granted."  And I indicated in there that by January 25th, 2019,
 5    any motions filed by the defense needed to be filed.  We're now
 6    here over one month later.  So don't tell me that you have been
 7    working diligently.  You haven't been working diligently.  You
 8    blew my deadlines.  You never even submitted the motion.  I'm
 9    not accepting a motion at this point.  I don't care how hard
10    you claim that you have worked on it.  Number one, I don't
11    believe it's true; and number two, you never submitted it.
12                Is there anything else that you believe, other
13    than what I identified that has been submitted in connection
14    with sentencing?  If you have some proof that you filed this
15    motion, show it to me.  If you have some proof that this motion
16    was sent, show it to me.  Clearly wasn't timely, but show it to
17    me.
18                MS. TROTT:  It's not on my phone and it appears
19    that I didn't do it correctly.
20                THE COURT:  So is there anything else, Ms. Trott,
21    that has been submitted in connection with sentencing?
22                MS. TROTT:  No.
23                THE COURT:  And can you confirm for me that you
24    received the Presentence Investigation Report?
25                MS. TROTT:  I have.
```

```
1                        USA VS. E. DEKAY
2                THE COURT:  Did you review it with your client?
3                MS. TROTT:  Yes, I did.
4                THE COURT:  Mr. Dekay, can you confirm for me that
5       you reviewed the Presentence Investigation Report with your
6       attorney?
7                THE DEFENDANT:  Yes, ma'am.
8                THE COURT:  Are there any objections, Ms. Trott,
9       to the Presentence Investigation Report?
10               MS. TROTT:  No, Judge.
11               THE COURT:  All right.  Is the defense ready to
12      move forward with sentencing?
13               MS. TROTT:  The defense would like the opportunity
14      to serve this motion.
15               THE COURT:  I am -- well, Mr. Cullinane, what is
16      the government's position on that?
17               MR. CULLINANE:  We oppose this motion.  As the
18      Court succinctly stated, there has been ample opportunity to
19      file it, and it's been very untimely and the government is
20      ready to proceed with sentencing of Mr. Dekay.
21               THE COURT:  I'll deny the request to file this
22      untimely motion.  I gave you, the defense, plenty of
23      opportunities to pursue this.  And I made it very clear at the
24      last court appearance that we had that I didn't view the motion
25      of having any merit to it.  And I think that is self-evident
```

1                        USA VS. E. DEKAY

2     when we review the transcript of the proceeding that we had

3     prior to Mr. Dekay's plea.  And it's self-evident when you

4     review the e-mail communications that you submitted, Ms. Trott,

5     in fact, I think there is probably nothing that is more

6     probative of the lack of merit to this motion than the e-mail

7     where you respond to Mr. Tripi's e-mail from December 8, 2017.

8     So, in any event, it's untimely, and, therefore, I'm denying

9     any request to file an untimely motion, and I'm denying any

10    request for an opportunity to do that.

11              So, does the government move to sentence the

12    defendant?

13              MR. CULLINANE:  Yes, your Honor.

14              THE COURT:  Is there anything, Mr. Cullinane, that

15    you would like to say before I sentence the defendant?

16              MR. CULLINANE:  Yes, your Honor.  Thank you very

17    much.  Your Honor, this Court is well aware of the conduct of

18    the Kingsmen, as this Court presided over a four-month long

19    trial in the winter and spring of 2018.  Even prior to that, in

20    December of 2016, this defendant stood before you and admitted

21    the information contained in the plea agreement.  In paragraph

22    five of the plea agreement, describes the use and distribution

23    of controlled substances by his fellow Kingsmen, including the

24    defendant.  Paragraph five also includes information about the

25    Kingsmen possessing firearms in furtherance of drug trafficking

1                      USA VS. E. DEKAY

2    and possession of those firearms as Kingsmen and at the

3    Kingsmen clubhouse.  Equally significant, your Honor, is the

4    fact that this defendant stood before you and admitted to his

5    conduct on three separate occasions in 2012 and 2013, all of

6    which are violent.  Two of which are very violent, they involve

7    drive-by shootings of different individuals because of

8    Kingsmen-related issues.  The third issue there that is

9    described and it's a violate crime is the Springville shut

10   down.  The Court, again, heard plenty of information about

11   these incidents.  The defendant talked about or the plea

12   agreement describes his conduct within the incidents.  You

13   heard plenty of testimony throughout the examination and cross

14   examination of witnesses that talked about "Ed" or "Ed Dekay"

15   or "Special Ed" being there on each of these occasions.  So

16   there is no doubt that he has committed these crimes, this

17   unlawful conduct, and he is here for sentencing.

18              Furthermore, the Sentencing Guidelines are

19   calculated as such so that a certain Guideline range would be

20   appropriate in this matter.  Because of his conduct on these

21   occasions, because of his membership in the Kingsmen and the

22   unlawful conduct they committed, a Guideline sentence is

23   absolutely appropriate.  To be clear, the government takes no

24   position within the specific sentence within the Guideline

25   range, but the government advocates for a Guideline sentence to

Case 1:15-cr-00142-EAW-MJR   Document 1601   Filed 03/12/19   Page 11 of 13

11

```
1                        USA VS. E. DEKAY
2      be imposed for Mr. Dekay's conduct as a result of his
3      involvement and participation in the Kingsmen club.  Thank you.
4                 THE COURT:  Thank you, Mr. Cullinane.
5                 Ms. Trott, anything you would like to say on
6      behalf of your client before I sentence him?
7                 MS. TROTT:  Yes, Judge.  I take exception to the
8      Court's ruling, for the record, and I believe my client will
9      have a colorful or colorable claim for ineffective assistance
10     of counsel.  And I would urge him to file that as soon as
11     possible.
12                Mr. Dekay admitted his conduct early, which indeed
13     saved the government resources.  He admitted his participation
14     in various crimes, which, I guess, was part of his cooperation.
15     However, right after the plea, Mr. Dekay was removed from his
16     normal facility, taken to Cleveland where Mr. Williams was also
17     housed.  He was then threatened --
18                THE COURT:  Who is Mr. Williams?
19                MS. TROTT:  I'm sorry, Willson, Greg Willson was
20     housed and I was contacted on a number of times, since Mr.
21     Willson was his next door cell mate and contacted me several
22     times worried about being labeled a "snitch."  I created a
23     motion which indicated the number of times my client has been
24     beaten up, threatened, kicked in the head and subjected to
25     excessive punishment while he has been in prison.  And my point
```

1                       USA VS. E. DEKAY

2    in making the motion was that I believed it was improper for

3    the government to withdraw the plea agreement that we had

4    before.  And in giving the Court the case that I provided, I

5    was trying to indicate that there is a rolling standard between

6    what, in contract law, since there was an agreement here, what

7    in contract law is good faith by either party.  And I submitted

8    for consideration or did not submit, it appears, for

9    consideration, the fact that my client had a willingness --

10                 THE COURT:  Mr. Dekay, are you asking me for new

11   counsel?

12                 THE DEFENDANT:  Yes, ma'am.

13                 THE COURT:  All right.  We're going to put a halt

14   to this right now.  I will contact the CJA panel.

15                 Ms. Trott, I'm going to advise you in open court

16   that your continued participation in the CJA panel, I think, is

17   in serious jeopardy.

18                 In addition, Mr. Dekay, I will contact the CJA

19   panel and have new counsel assigned.  If the government has an

20   objection to this, you can certainly state it on the record.

21                 MR. CULLINANE:  No objection, your Honor.  Thank

22   you.

23                 THE COURT:  So what we'll do, Mr. Dekay, is once

24   we get new counsel assigned, I will either have you appear in

25   front of me or more likely in front of the magistrate judge,

13

1        USA VS. E. DEKAY

2   Judge Roemer, to have counsel assigned.  Now, we're going to

3   have to deal with the conflicts.  So if you could get to,

4   probably, Judge Roemer's Chambers, an updated conflict list

5   because there obviously has been a number of defendants in this

6   case and there have been a number of defendants who they've

7   already had assigned counsel.  So there are a lot of conflicts

8   off of the CJA panel.  We'll get that.

9            MR. CULLINANE:  We'll send that this afternoon,

10  Judge.  Thank you.

11           THE COURT:  We are adjourned.  Thank you.

12                       *   *   *

13                  CERTIFICATE OF REPORTER

14

15     I certify that the foregoing is a correct transcript of the

16  record of proceedings in the above-entitled matter.

17

18  S/ Karen J. Bush,  RPR

19
    Official Court Reporter
20

21

22

23

24

25