```
1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3

4

5      - - - - - - - - - - - - - - X
       UNITED STATES OF AMERICA    )    15CR142
6                                  )
       vs.
7                                       Buffalo, New York
       GREGORY WILLSON, ET AL.     )    September 21, 2016
8              Defendant.               1:15 p.m.
       - - - - - - - - - - - - - - X
9      Appeal of Magistrate Judge's Decision and Order

10

                        TRANSCRIPT OF PROCEEDINGS
11             BEFORE THE HONORABLE ELIZABETH A. WOLFORD
                      UNITED STATES DISTRICT JUDGE
12

13                    WILLIAM J. HOCHUL, JR., ESQ.
                      United States Attorney
14                    BY:JOSEPH TRIPI, ESQ.
                         BRENDAN T. CULLINANE, ESQ.
15                    Assistant United States Attorney
                      138 Delaware Avenue
16                    Buffalo, New York 14202

17

                      BARRY NELSON COVERT, ESQ.
18                    Lipsitz, Green, Scime, Cambria, LLP
                      42 Delaware Avenue, Suite 120
19                    Buffalo, New York 14202

20                    REETUPARNA DUTTA, ESQ.
                      Hodgson Russ, LLP
21                    The Guaranty Building
                      140 Pearl Street, Suite 100
22                    Buffalo, New York 14202

23

       COURT REPORTER:   Karen J. Bush, Official Court Reporter
24                       Karen_bush@nywd.uscourts.gov
                         100 State Street
25                       Rochester, New York 14614
```

```
1                         USA VS. G. WILLSON, ET AL

2                    CONTINUATION OF APPEARANCES

3
                         MARK J. MAHONEY, ESQ.
4                        Harrington & Mahoney
                         70 Niagara Street, Third Floor
5                        Buffalo, New York 14202

6
                         P R O C E E D I N G S
7
                            *         *         *
8

9

10

11              THE CLERK:  Criminal action, 2015-142, United

12    States versus Gregory Willson, et al, oral argument.  Counsel,

13    please state your name and the party you represent for the

14    record.

15              MR. TRIPI:  Joseph Tripi for the United States and

16    Brendan Cullinane for the United States.

17              THE COURT:  Good afternoon.

18              MS. DUTTA:  Reena Dutta for defendant, Tom

19    Scanlon.

20              THE COURT:  How do you pronounce the last name?

21              MR. DUTTA:  Dutta.

22              THE COURT:  Good afternoon, Ms. Dutta.  Mr.

23    Mahoney is here.  And we have Mr. McIndoo?

24              DEFENDANT MCINDOO:  Yes.

25              THE COURT:  Mr. McIndoo, good afternoon.
```

1                    USA VS. G. WILLSON, ET AL

2                 And is Mr. Scanlon here?

3                 MS. DUTTA:  He is in the courtroom.

4                 THE COURT:  Good afternoon, sir.

5                 MR. COVERT:  Barry Covert on behalf of Andre

6      Jenkins.

7                 THE COURT:  And is Mr. Jenkins here?

8                 MR. COVERT:  He is here, in the white shirt.

9                 THE COURT:  Good morning.  It looks as though

10     there are a number of defense counsel who are not here, even

11     though defendants are here.

12                MR. COVERT:  That is correct.  I am standing in

13     for the remaining defense counsel, if you want to go through

14     them.

15                THE COURT:  I got a list.  I want to make sure I

16     got all of the folks straight.  Is Mr. Willson here?  All

17     right.  Good afternoon.

18                DEFENDANT WILLSON:  Do you want me to stand?

19                THE COURT:  No, that's fine.  I want to be able to

20     eyeball you, know who you are.

21                MR. COVERT:  I'm standing in for Mr. Agro, your

22     Honor.

23                THE COURT:  And is Mr. Pirk here?

24                DEFENDANT PIRK:  Here.

25                THE COURT:  Good afternoon, sir.

1                    USA VS. G. WILLSON, ET AL

2                    MR. COVERT:  I am standing in for Mr. Easton and

3         Ms. Meyers Buth, your Honor.

4                    THE COURT:  Mr. Enix, I don't think --

5                    MR. COVERT:  I don't think he is here, your Honor.

6         I've been asked by Mr. Connors to stand in for him, your Honor.

7                    THE COURT:  Mr. Caruso.

8                    MR. COVERT:  I am standing in for Mr. Pieri.  Mr.

9         Caruso is here, front row, second person.

10                   THE COURT:  Good afternoon.  Mr. Dekay.

11                   DEFENDANT DEKAY:  Right here.

12                   MR. COVERT:  I'm standing in for Emily Trott.

13                   THE COURT:  Mr. Williams, Jason Williams, he

14        is out of custody.

15                   MR. COVERT:  He is out of custody and I'm standing

16        in for Joseph Catalano.

17                   THE COURT:  And he is not here?

18                   MR. COVERT:  He is not present, your Honor.

19                   THE COURT:  Mr. Osborne.

20                   MR. COVERT:  And I have been asked by Andrew

21        Brautigam to stand in for him, your Honor.

22                   THE COURT:  Mr. -- I'm going to mispronounce it --

23        Olejniczak.  Good afternoon.  How do you pronounce that?

24                   DEFENDANT OLEJNICZAK:  Olejniczak.

25                   MR. COVERT:  I will stand in for Mr. Stachowski.

1                    USA VS. G. WILLSON, ET AL

2              THE COURT:  Jack Wood.

3              MR. COVERT:  I will stand in for Mr. Molloy.

4              THE COURT:  Glen -- I'm not going to pronounce

5    that -- Mr. Okay represents him.

6              MR. COVERT:  I've been asked by Mr. Okay to stand

7    in for him.

8              THE COURT:  Mr. Mahoney and Mr. McIndoo is there.

9    Anybody we didn't call?

10             Let me state on the record, I know the defendants

11   who are in custody are in restraints right now.  It's my

12   practice, actually, not to require that.  I was asked by the

13   Marshal Service and told by them, frankly, we wouldn't be able

14   to go forward with the proceeding because of the number of

15   defendants who are in restraints.  For purposes of today, we're

16   going to go forward with the defendants in restraints and we'll

17   see how we handle that going forward.

18             So, in any event, the matter is on for the appeal

19   that was filed by Mr. Scanlon's attorneys, but on behalf of all

20   of the defendants who are here with respect to Judge Roemer's

21   decision to deny the request for a scheduling order with

22   respect to Brady material.  So, Ms. Dutta, it's your appeal, so

23   why don't you go forward?

24             MS. DUTTA:  Thank you, your Honor.  We're not

25   asking that you reweigh facts.  Our position is that there are

1                    USA VS. G. WILLSON, ET AL

2    multiple permissible views on how this could come out and we're

3    asking to you take a different one.  There is no reason not to

4    issue a pretrial Brady in this case.  There are number of

5    reasons, the most significant of which is this is a complex

6    case.  This is a 72-page indictment and encompasses 46 counts,

7    16 defendants are charged, two of whom have since pled.  The

8    indictment itself is as a result of a multi-jurisdictional

9    investigation involving the FBI in Buffalo, Tennessee and

10   Florida, involved ICE, Homeland Security, the Erie County

11   Sheriff's Department, the Buffalo Police Department, the New

12   York State Police Department, and I don't think I'm naming them

13   all, your Honor.  And the nature of that investigation suggests

14   that there is going to be potential Brady and Giglio term in

15   the hands of, multiple law enforcement agencies and discrete

16   agencies.  And the crime itself, your Honor, is a

17   multi-discretional crime.  There are allegations of acts that

18   took place in Pennsylvania, Florida, and Georgia and various

19   places in New York State, it's not going to be feasible for

20   counsel to get on a plane.

21                    THE COURT:  Let me ask you a question.  Because

22   this is an appeal from Judge Roemer's decision, so the standard

23   is that I would have to determine that his decision was clearly

24   erroneous or contrary to law.  So the issue isn't so much maybe

25   whether or not I would have made a different decision to begin

1                    USA VS. G. WILLSON, ET AL

2    with.  The issue is whether or not Judge Roemer exercised a

3    discretion here to deny the order was contrary to law or

4    clearly erroneous.  And, I mean, how do you get over that

5    hurdle?

6                    MS. DUTTA:  Two things.  The first being this is a

7    complex case.  And a magistrate judge didn't address the nature

8    of the complexity in his decision denying the request.  That is

9    the first part.  And the second is the distinction between

10   Brady, Giglio and Jencks, the magistrate judge adopted the

11   government's that Giglio.

12                   THE COURT:  I've always called it Giglio, maybe

13   it's wrong, so in any event go ahead.

14                   MS. DUTTA:  Giglio material is Brady material,

15   that is black letter law.  And I think it is the case and I

16   think the point that the government has tried to make is Giglio

17   is to be suppled at the same time as Brady.  This is simply not

18   the case.

19                   THE COURT:  Why isn't that the case?  The cases

20   I've read, Giglio material is required to be disclosed maybe

21   earlier than after the witness testifies are where you have a

22   witness who is the case for the government.  The case rises and

23   falls on one particular witness.  And without knowing the scope

24   of the impeachment material, the defense really isn't going to

25   have an appropriate opportunity to prepare for trial, which,

1                    USA VS. G. WILLSON, ET AL

2      obviously, Brady requires.  I mean, why is this that type of a

3      case?

4                    MR. TRIPI:  Well, that is Giglio material, your

5      Honor.  As you point out, that is Brady material and the rule

6      is it has to be disclosed in sufficient time for its effective

7      use for the defense in terms of this case how complex and how

8      many people involved and where the material is and where

9      defense counsel would have to potentially go to investigate

10     that material to effectively use it, which is not going to be

11     effective right before a witness testifies.

12                   THE COURT:  There is a little difference between

13     where we are right now, pretrial motions haven't been filed,

14     and having a witness testify.

15                   MR. TRIPI:  Absolutely, your Honor.  We're just

16     asking for a pretrial order sufficiently in advance of trial.

17     We prefer it before pretrial motions are due because there is

18     simply no reason not to.  The government hasn't claimed, at

19     least in this motion, that there is an issue of witness

20     intimidation or identification that could harm any person.

21     There is no factual predicate of that in this motion.  There is

22     really no reason to not to put in an order and significant

23     reasons to put in an order, again, given the fact that not

24     putting in one could avoid avoidable delays and wreak havoc on

25     this Court's schedule and there is in reason to do that.

```
1                    USA VS. G. WILLSON, ET AL
2               THE COURT:  Okay.  Anything else?
3               MR. TRIPI:  No, your Honor.
4               THE COURT:  Okay.  I will let you respond after we
5     hear from Mr. Tripi.  Mr. Tripi?
6               MR. TRIPI:  Does anybody else want to argue and
7     I'll respond in kind to everyone?
8               THE COURT:  I guess I assumed Ms. Dutta was
9     arguing on behalf of all.
10              MR. COVERT:  She is.
11              MR. MAHONEY:  I have one thing to add.
12              THE COURT:  I knew you would, Mr. Mahoney.
13              MR. MAHONEY:  On the issue of the standard, it
14    really, first of all, the government will maintain and always
15    maintains that Brady did not create a right to discovery.  That
16    is contrary to what I think other people interpret Brady to
17    mean.  The reason I raise this point is that if you're thinking
18    in terms of the standard as being a normal, quote, "discovery
19    motion," that is brought based under referral of the magistrate
20    judge from the Article 3 judge, then, yes, there is that
21    standard in terms of how we review the magistrate judge's
22    order.  But I think this stands on a different footing.  The
23    defendants are seeking to implement their constitutional right,
24    which obtains under Brady and the decisions after Brady and
25    some decisions prior to Brady, and they are seeking to have
```

1                    USA VS. G. WILLSON, ET AL

2    judicial involvement to enforce that fundamental constitutional

3    right.  And so I will borrow from the government's argument

4    it's not simply a discovery order, it's living up to

5    constitutional obligations of the defendant.  The defendants

6    have the right to an Article 3 judge's determination on that

7    actual issue as to the extent to which the Court is going to

8    ensure that the government lives up to that obligation.  And so

9    I think this stands on different footing.

10                   THE COURT:  How does that argument, though, fit in

11   with the fact is Brady is retrospective?  So, in other words,

12   if, in fact, there is a Brady violation, that it really doesn't

13   become known until the time of trial and then the question is

14   whether or not it was provided sufficient time to prepare for

15   trial.  And here we're looking at it, I mean what is being

16   requested is something going forward, and to essentially cut

17   off any potential constitutional violation.

18                   MR. MAHONEY:  Well, this is how the government has

19   succeeded, I guess, by relentless and tireless repetition of

20   the same thing for decades and has succeeded in distorting the

21   role of Brady and to what the government will say is Brady is

22   not a discovery case, it's a suppression case.  It means there

23   will be a remedy if they're caught.

24                   THE COURT:  I think that is what the case law

25   says, too.

1              USA VS. G. WILLSON, ET AL

2              MR. MAHONEY:  Certainly it's a remedy if they are

3    caught, but that is on the appellate level.  It doesn't mean

4    that on the trial level the government can cross its fingers

5    and say, we're not going to give you anything and hopefully we

6    hope that later on it's not proven to be important at a later

7    time.  The Court, by buying into the argument, is encouraging

8    the government to take chances by adopting that standard, and

9    by not saying to the government, well, what do you have.  And

10   as a pre-condition to deciding discovery issues, the Court,

11   judges tend to say, well, the government knows its obligations

12   under Rule 16 and knows its obligations under Brady.  The

13   problem with that, if you look at the U.S. Attorney Office's

14   manual it defines Brady as evidence which, on its own, would

15   require an acquittal.  Now, that is a very narrow

16   interpretation of Brady.  And yet that is what the official

17   statement by the Department of Justice.  So you cannot, a judge

18   cannot possibly say, as the magistrate judge tends to, well,

19   the government understands its Brady obligation.  I don't think

20   they do.  They certainly don't articulate in the papers what

21   their obligation is.  They make the pat phrase, "we understand

22   the Brady obligation."  Well, if you look at the U.S.

23   Attorney's Manual, it states a phrase which I doubt you agree

24   with them or I doubt many judges do, but very few look at it.

25   My concern is Brady, unless we say that Brady doesn't impose

1               USA VS. G. WILLSON, ET AL

2    any argument on the obligation on the government to do anything

3    at trial, it's there in case they get caught, then why are we

4    talking about it?  I think that most judges believe if it's a

5    due process right, it has.  There is no such thing for a right

6    that only applies on appeal.  There is no fundamental

7    constitutional right that only applies once there is a

8    conviction.  It has to somehow apply at the trial level, it's

9    up to the trial judge to determine to ensure that right is

10   being followed.  I don't think it's enough to say, well, the

11   government just sit down and say this is an appellate issue and

12   unless we get caught, you got nothing to say to us.  I just

13   don't think that is the case.  I think that totally dilutes the

14   responsibility of the judge to see to it that fundamental

15   constitutional rights that apply to trial are actually applied

16   at trial and not distorted into the idea that there is some

17   simple appellate remedy.  There is no constitutional right that

18   I know of that only applies at the appellate level.  It applies

19   at trial and it comes back to the Article 3 judge, not the

20   magistrate judge to make sure the rights are protected.  The

21   fact the defense wanted to ask the magistrate judge, I don't

22   think, justifies any diluted review of the magistrate judge's

23   ability to grant that order.

24               THE COURT:  Thank you.  Mr. Tripi.

25               MR. TRIPI:  Judge, in the defense papers, which

1               USA VS. G. WILLSON, ET AL

2   they've all adopted, they concede that the standard is clearly

3   erroneous or contrary to law.  We're here on the appeal of

4   Judge Roemer's decision denying pretrial disclosure Brady

5   order.  That is what we're here for.  We agreed with this

6   Court's suggestion and the defenses agreed with in their papers

7   is it is a clearly erroneous and contrary to law.  The first

8   thing Ms. Dutta said there were multiple permissible views on

9   how this could have come out.  And we're asking you to take a

10  different view stated a different way.  The defense cannot and

11  has not established that Judge Roemer's decision was clearly

12  erroneous and contrary to law.  In fact, what has been done in

13  this case and what is being done is exactly what is

14  Constitutionally required.  Disclosures of exculpatory Brady

15  materials have been and will continue to be made in the event

16  they are discovered, found through reasonable diligence.

17              THE COURT:  And in other words, the government's

18  position is that you're providing, quote, unquote, exculpatory

19  Brady material as soon as you're aware of it, but not

20  necessarily the impeachment type of Brady material.

21              MR. TRIPI:  Yes, Judge.  And I would take it even

22  further.  I'm saying I'm taking a broad view of it.  For

23  example, by way of example, I brought a brief example of

24  something I provided to counsel for Mr. Scanlon.  There was a

25  witness who provided a statement to the FBI essentially saying

1               USA VS. G. WILLSON, ET AL

2    that since the change in leadership at the clubhouse,

3    referencing the old man clubhouse, she has noticed drug use by

4    members and associates behind the clubhouse building.  That is

5    not really exculpatory, that -- now that Scanlon is not the

6    boss of that drug house, they are noticing drugs outside of the

7    clubhouse, but in a broad view of it, I provide it.  I guess

8    the argument or inference could be drawn, well, it wasn't like

9    that when he was the boss.  Clearly that wouldn't stop drug use

10   or inside the clubhouse or things like that, but that is an

11   example of the type of thing that I have turned over and I

12   don't need a pretrial order to do that.  I'm aware of my

13   obligations.  If impeachment material doesn't rise to the level

14   of exculpatory information, things such as criminal histories,

15   plea agreements, things like that, all of that stuff gets

16   turned over in due course at the time of trial.  In any trial,

17   I ever conducted in Federal Court, any trial I ever conducted

18   in state court and that is exactly what the law requires.

19   Things that rise to the level of exculpatory material or are

20   even close that stuff will be provided as I uncover it.  And

21   I'd like to correct a couple of things that kind of dribbled

22   into the record at different points in time.  Because the

23   defense has quoted me, as your Honor is aware, there was a

24   detention hearing regarding Mr. Enix before your Honor.  And I

25   think in response to this Court's question and that situation,

1                      USA VS. G. WILLSON, ET AL

2      I said there was no Brady material.  That was a response to as

3      it related to Mr. Enix at that time.  Then in front of Judge

4      Roemer, I told him there was no Brady material.  Actually that

5      was an error in my part because months earlier on June 7th,

6      when I provided voluntary discovery, I went back and looked at

7      what I provided.  I provided things like notes from witnesses

8      and statements from the local police department when they did a

9      canvass and said, oh, it might have been so and so, or you're

10     such-and-such, short of rank speculation, you know, is that

11     exculpatory, maybe, maybe not, but that kind of stuff was

12     provided.  When people said, oh, we speculate that the killer

13     of the two individuals who were murdered in this case is Mr.

14     Caruso, not -- they didn't say Mr. Jenkins, we now know Mr.

15     Jenkins has been convicted, but we still provided those types

16     of things where people speculated that it was Mr. Caruso who

17     committed the murder, so those things were in the discovery

18     already before any of the motions were filed, I continued to

19     review 302s and grand jury materials, and I made grand jury

20     disclosures.  I'm well aware of my obligations, I plan to do

21     that.  The defendants can't say they haven't received

22     disclosures because they know they have.  We're going to comply

23     with our obligations.  We've done so to this point.  We

24     represented that to Judge Roemer and we represent it to this

25     Court.

1                       USA VS. G. WILLSON, ET AL

2              And as the Court pointed out, we're well in

3      advance of even a motion deadline much less trial.  We'll

4      continue to review all of the information that comes to our

5      attention or is in possession of law enforcement, and we'll

6      make appropriate disclosures.  But, on this appeal, Judge

7      Roemer didn't get anything wrong.  It was not clearly erroneous

8      or contrary to law his decision.  Essentially defense is asking

9      the Court to do what other courts have said is not required.

10     If you look at the Second Circuit decision in *Coppa*, if you

11     look at Judge Schroeder's decision that I quoted in *Hill*.  His

12     quote in that Report and Recommendation was with respect to

13     impeachment material that does not rise to the level of Brady

14     material, such as Jencks statements.  The prosecution is not

15     required to disclose and turn over such statements until after

16     the witness has completed his or her direct testimony.

17             Well, we're going to turn over Jencks material

18     before that point in time at the appropriate time.  We're going

19     to turn over impeachment material before a witness testifies.

20     We do that in every case.  We don't wait until somebody

21     testifies and then spring it on them.  And I'm sure this court

22     will give appropriate deadlines and times for defense counsel,

23     if something were to come up in the middle of trial, everyone's

24     best efforts are being complied with and something comes up,

25     I'm sure this Court would give time for defense to review the

1                    USA VS. G. WILLSON, ET AL

2   material they think they needed earlier.  But that is not

3   anyone's attention to hold out on things like that so that they

4   can't prepare themselves for trial.

5                    And impeachment material that is solely

6   impeachment material is not the exculpatory material that we're

7   talking about where disclosures are required right now.  I

8   submit anything that is marginally exculpatory, has been and

9   will be turned over.

10                   THE COURT:  Even if it's impeachment material

11  right now is your point?

12                   MR. TRIPI:  No, if it's strictly impeachment

13  material, no.

14                   THE COURT:  So if it's impeachment material that

15  is material to guilt, you turn it over now.

16                   MR. TRIPI:  Yes, correct.  Sorry, I misunderstood

17  you, will do.

18                   THE COURT:  And that is your policy, that is your

19  practice and your office's policy.

20                   MR. TRIPI:  Yes.  If we have impeachment material

21  that rises to the level of Brady, exculpatory because the case

22  rises and falls on one person or things like that, of course, I

23  turn that over.  I submit that is not this case, but if that

24  were to be the case, it would be turned over.

25                   THE COURT:  Anything else, Mr. Tripi?

1                    USA VS. G. WILLSON, ET AL

2              MR. TRIPI:  No, Judge, I rely on my papers.

3              THE COURT:  Ms. Dutta, any response?

4              MR. TRIPI:  Just a couple of things, your Honor.

5    I apologize if I did not speak clearly, but I did not mean to

6    suggest that we view there are multiple permissive views of the

7    evidence.  I thought I said there are not multiple permissive

8    views of the evidence.  The only one is not to enter a Brady

9    order in this case.

10             THE COURT:  Do you have any case that provides for

11   an order requiring an order for Brady at this stage?

12             MR. TRIPI:  No, not prior to pretrial motions.

13   But there is nothing preventing the Court from issuing such an

14   order.  And to the extent the Court should be, after pretrial

15   motions and closer to trial, we're fine with that.  We're

16   trying to get an order that sets a date certain that says we

17   have Brady and Giglio so we don't cause delays to the parties

18   and defendants and to this Court.

19             THE COURT:  Anything else, Mr. Mahoney?

20             MR. MAHONEY:  On that last issue, first of all,

21   the northern district there are a standing order for Brady

22   material to be provided within 14 days.

23             THE COURT:  Fourteen days.

24             MR. MAHONEY:  No.  Arraignment, I think that is

25   the time, northern district.  This is a judicial counsel, a

1                    USA VS. G. WILLSON, ET AL

2      report that was prepared I don't know if it was a group out of

3      the national judicial officer, but it was a report on Brady

4      practices around the country and it listed a number of

5      jurisdictions.  I can send your Honor and all parties a

6      reference to that memorandum which listed different practices,

7      different districts with standing Brady orders right at the

8      very beginning of the case to sort of obviate all of this

9      question.

10                    THE COURT:  Could you?

11                    MR. MAHONEY:  I'll file a letter to the Court and

12      all counsel enclosing that.

13                    THE COURT:  Thank you.

14                    MR. TRIPI:  I would note if that pre dates *Coppa*

15      or *Coppa*, however you want to pronounce it, that would be

16      irrelevant.

17                    MR. MAHONEY:  Coppa is a Second Circuit decision,

18      we're talking other districts.

19                    THE COURT:  I'll take a look at it because I am

20      interested in it.

21                    MR. TRIPI:  Judge, I forgot one thing.  On two

22      issues of this case being a complex case, this case is no other

23      complex than any other racketeering which I've tried multiple

24      RICO cases in federal courts.  There were no orders to this

25      effect in those cases, so, and everything worked out just fine

1                     USA VS. G. WILLSON, ET AL

2    in terms of disclosures and everything like that.  So this is

3    not out-of-the-box complex in that regard.  In terms of witness

4    -- there was a reference as to witness harm and things of that

5    nature.  I think, and I've argued this to Judge Roemer, the

6    indictment makes clear that there were concerns with respect to

7    witness intimidation, witness tampering, so I believe I

8    repeated, and in some of my filings before Judge Roemer as well

9    and we do have those concerns.  Obviously if you provide all

10   impeachment information now, that is a tantamount to disclosure

11   of every government witness.  We may not have any witnesses

12   that make it to a trial stage.

13                     THE COURT:  Okay.

14                     MR. TRIPI:  Thank you.

15                     THE COURT:  Thank you, Mr. Tripi.  I'm going

16   reserve decision on this.  I'll get a decision out as soon as

17   possible.  Let me raise another issue and that is, Mr. Tripi,

18   you had copied me in on a letter that you had sent setting

19   September 30th.

20                     MR. TRIPI:  As a plea deadline.

21                     THE COURT:  Is that still the deadline?

22                     MR. TRIPI:  Yes.

23                     THE COURT:  And the pretrial discovery deadline in

24   this case is sometime in early December.

25                     MR. TRIPI:  I think they moved the motion deadline

1                    USA VS. G. WILLSON, ET AL

2      to December 7th.

3                    THE COURT:  What I want to do is set a date in

4      January for us all to get together and pick a trial date.  I

5      know that pretrial matters are still going to be pending.  At

6      this point, we got too many defendants in custody, as far as

7      I'm concerned, to wait until all pretrial motions have been

8      resolved to pick a trial date because we're going to have a

9      hard enough time, I think, as it is, working with everybody's

10     schedules to get a date.  We'll set the date out far enough so

11     that it allows for any pretrial matters to be resolved but that

12     is what I would like to do.

13                    MR. TRIPI:  I agree and appreciate that, Judge.

14                    THE COURT:  So, what I'm going to do, and anybody

15     that is here right now can tell me if you're not available, but

16     my thought is we'll schedule this on January 12th, it's a

17     Thursday, 2 p.m.  I'm going to issue an order indicating that

18     if defense counsel, for whatever reason, is not available on

19     that date, they need to have somebody here who knows their

20     schedule and can work with them to set a trial date.

21                    The other issue that I want everyone to be

22     prepared to discuss, in addition to the length of the trial, I

23     mean, that is primarily going to fall on your shoulders, Mr.

24     Tripi, in terms of letting us know that, is talk about Rule 18

25     as well that talks about where the trial is actually held.

Case 1:15-cr-00142-EAW-MJR   Document 1773   Filed 07/29/19   Page 22 of 23

```
 1                  USA VS. G. WILLSON, ET AL
 2    Obviously this is a Buffalo case, my seat is in Rochester.
 3    Most of the attorneys are in Rochester.  I'm assuming most of
 4    the witnesses are from this side of the district and I have not
 5    yet tried a Buffalo case in Rochester nor am I suggesting that
 6    I would insist on doing that here, but if we try this case
 7    here, I'm not going to be able to do it five days.  I'm going
 8    to have to have one day where we're down and I'm back in
 9    Rochester.  I want you to be -- everybody to be prepared to
10    address that issue.  But, also in estimating the trial length,
11    you need to take that into account.
12                  MR. TRIPI:  I'll begin looking at that now.
13                  THE COURT:  All right.  Anything else, Ms. Dutta?
14                  MS. DUTTA:  No, your Honor.
15                  THE COURT:  Mr. Mahoney or Mr. Covert.
16                  MR. COVERT:  No, your Honor.
17                  THE COURT:  Mr. Tripi?
18                  MR. TRIPI:  No, your Honor.  Thank you.
19                  THE COURT:  Thank you very much, everyone.
20
21
22
23
24
25
```

1

2

3

4

5                                    *    *    *

6                          CERTIFICATE OF REPORTER

7

8         I certify that the foregoing is a correct transcript of the

9     record of proceedings in the above-entitled matter.

10

11    S/ Karen J. Bush, RPR

12
      Official Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25